UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-02044-DOC-JDE                    Date: October 1, 2025

Title: Nhi Vo v. AB Car Rental Services, Inc. et al

| | |
|---|---|
| PRESENT: | THE HONORABLE DAVID O. CARTER, JUDGE |

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):    ORDER REMANDING CASE TO STATE COURT SUA SPONTE**

On the Court's own motion, the Court hereby **REMANDS** this case to the Superior Court of California, County of Orange.

**I.    Background**

This is an employment action. Plaintiff Nhi Vo ("Plaintiff") worked as a Rental Sales Agent for AB Car Rental Services and Avis Budget Group. Complaint ("Compl.") (Dkt. 1-1). Plaintiff alleges that she rejected a coworker's advances in December 2022 and reported the coworker to Human Resources in February 2023. *Id.* This same coworker had begun sexually harassing Plaintiff and continued to do so despite repeated reprimands and discipline from Human Resources. *Id.* Plaintiff reported the same coworker again on April 10, 2023. *Id.*

Plaintiff's supervisor, Airport Manager Eileen Flores, began singling out Plaintiff for minor mistakes in February 2023. *Id.* In March 2023, Flores demanded that Plaintiff begin overcharging walkup clients. *Id.* In May 2023, Plaintiff reported Flores for retaliation following Plaintiff's complaints that Flores accused Plaintiff of scamming customers. *Id.* Shortly after Plaintiff's employers confirmed that Plaintiff was correctly billing clients, Flores transferred out of Plaintiff's office. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02044-DOC-JDE  Date: October 1, 2025
Page 2

In April 2023, Plaintiff's employers gave Plaintiff a "final warning" for allegedly processing a reservation client as a walkup client for her financial benefit, even though this was Plaintiff's first warning over the past four years. *Id.* Moreover, Plaintiff's client never mentioned he had a reservation, the car rental system did not show the client as having a reservation, and Plaintiff's peers also allegedly processed these reservations as mistaken walkups without any discipline. *Id.* Plaintiff's employers never fixed the car rental system to correctly display clients' reservations. *Id.* Accordingly, after four alleged instances of processing reservations as walkups, Plaintiff was suspended then terminated in August 2023. *Id.* Plaintiff's employers failed to pay all commission wages and accrued vacation wages upon termination. *Id.*

Plaintiff alleges causes of action for sexual harassment, retaliation for complaints about harassment, failure to prevent harassment, whistleblower retaliation, wrongful termination in violation of public policy, and waiting-time penalties against Defendants AB Car Rental Services, Inc., Avis Budget Group, Inc., and Does 1-20 ("Defendants"). *Id*.

Plaintiff originally filed suit in the Superior Court of California, County of Orange, on August 11, 2025. Notice of Removal ("Not.") (Dkt. 1). On September 10, 2025, Defendants removed the action to this Court, asserting federal question and diversity jurisdiction. *Id*.

## II. Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. This statute "is strictly construed *against* removal jurisdiction," and the party seeking removal "bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (emphasis added) (citations omitted).

Federal diversity jurisdiction requires that the parties be citizens of different states and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). For diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02044-DOC-JDE                                                                 Date: October 1, 2025
                                                                                                                           Page 3

state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the federal courts of original jurisdiction over the matter. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

     Generally, a removing defendant must prove by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008). If the complaint affirmatively alleges an amount in controversy greater than $75,000, the jurisdictional requirement is "presumptively satisfied." *Id.* In that situation, a plaintiff who then tries to defeat removal must prove to a "legal certainty" that a recovery of more than $75,000 is impossible. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Crum v. Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). This framework applies equally to situations where the complaint leaves the amount in controversy unclear or ambiguous. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

     A removing defendant "may not meet [its] burden by simply reciting some 'magical incantation' to the effect that 'the matter in controversy exceeds the sum of [$75,000],' but instead, must set forth in the removal petition the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000]." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (quoting *Gaus*, 980 F.2d at 567). If the plaintiff has not clearly or unambiguously alleged $75,000 in its complaint or has affirmatively alleged an amount *less* than $75,000 in its complaint, the burden lies with the defendant to show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010); *Guglielmino*, 506 F.3d at 699.

     While the defendant must "set forth the *underlying facts* supporting its assertion that the amount in controversy exceeds the statutory minimum," the standard is not so taxing so as to require the defendant to "research, state, and *prove* the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (emphases added). In short, the defendant must show that it is "more likely than not" that the amount in controversy exceeds the statutory minimum. *Id*. Summary judgment-type evidence may be used to substantiate this showing. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). For example, defendants

may make mathematical calculations using reasonable averages of hourly, monthly, and annual incomes of comparable employees when assessing the amount in controversy in a wrongful termination suit. *Coleman*, 730 F. Supp. 2d. at 1148–49.

Federal district courts also have original jurisdiction over actions that present a federal question. *See Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 & n.2 (9th Cir. 2002). Federal district courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that the basis for federal jurisdiction must appear on the face of the properly pleaded complaint, either because the complaint directly raises an issue of federal law or because the plaintiff's "right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983). "[A] case may not be removed to federal court on the basis of a federal defense ..., even if the defense is anticipated in the plaintiff's complaint ...." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (citation omitted).

If the court lacks subject matter jurisdiction, any action it takes is ultra vires and void. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101–02 (1998). The lack of subject matter jurisdiction may be raised at any time by either the parties or the court. Fed. R. Civ. P. 12(h)(3). If subject matter jurisdiction is found to be lacking, the court must dismiss the action, *id.*, or remand pursuant to 28 U.S.C. § 1447(c). A court may raise the question of subject matter jurisdiction *sua sponte*. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

### III. Discussion

#### A. Federal Question Jurisdiction

First, Defendant argues that this Court has federal question jurisdiction in this action because resolving Plaintiff's claims requires interpreting the Collective Bargaining Agreement ("CBA"). Not. ¶ 2. The Court disagrees.

Federal question jurisdiction is generally governed by the well-pleaded complaint rule, which provides that the basis for federal jurisdiction must appear on the face of the properly pleaded complaint, either because the complaint directly raises an issue of federal law or because the plaintiff's "right to relief under state law requires resolution of

a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13.

On the face of Plaintiff's properly pleaded Complaint, no basis for federal jurisdiction exists. Plaintiff's Complaint includes only claims that arise under state law, so no issue of federal law has been directly raised. *See generally* Compl. Further, Plaintiff's "right to relief under state law" does not require any resolution of a substantial question of federal law in dispute. *Id.* Although Defendant argues that federal law preempts Plaintiff's state-law claims, this argument also fails for the reasons below. Defendant has not shown that any basis for federal jurisdiction exists from Plaintiff's Complaint.

Second, Defendant contends that § 301 of the Labor Management Relation Act (LMRA) preempts the relief sought in Plaintiff's Complaint because the resolution of Plaintiff's state-law claims requires interpreting provisions of the CBA. Not. ¶ 34. The Court disagrees.

The Ninth Circuit has established a two-part test to determine whether a state-law claim is preempted by § 301. *Columbia Export Terminal, LLC v. Int'l Longshore and Warehouse Union*, 23 F.4th 836, 842 (9th Cir. 2022); *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053 (9th Cir. 2007). First, courts must inquire "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Burnside*, 491 F.3d at 1059. "If the right exists solely as a result of the CBA, then the claim is preempted." *Id.* But if not, courts must "proceed to the second step and ask whether [the state-law] right is substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Caterpillar*, 482 U.S. at 394). A state-law right is "substantially dependent on the analysis of the CBA" if "the claim cannot be resolved" without interpreting the CBA versus "simply looking to the CBA." *Columbia Export Terminal*, 23 F.4th at 842. Claims that require the interpretation of a collective bargaining agreement are preempted. *See Dent v. Nat'l Football League*, 902 F.3d 1109, 1116 (9th Cir. 2018); *McCray v. Marriott Hotel Services, Inc.*, 902 F.3d 1005, 1010 (9th Cir. 2018).

Under the second step, "interpretation" is construed narrowly. *Dent*, 902 F.3d at 1116. "If there is only a hypothetical connection to a collective bargaining agreement and a state law claim, or if a collective bargaining agreement will only be considered, referred to, or simply applied, then the collective bargaining agreement will not be 'interpreted.'" *Id.* (internal citations omitted); *see also Lehr v. Sierra Ambulance Service*, 2018 WL 6445687, at *3 (E.D. Cal. 2018). "[T]he need to interpret the [CBA] must

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02044-DOC-JDE                                                                 Date: October 1, 2025
                                                                                                                     Page 6

inhere in the nature of the plaintiff's claim." *Id.* (external citations omitted). "[R]esolution of a plaintiff's claim must require interpretation of a provision of a collective bargaining agreement, it is not enough that a [CBA] is potentially relevant to the state law claims without any guarantee that interpretation or direct reliance will actually occur." *Dent*, 902 F.3d at 1116-17. Purely factual questions that pertain to the conduct of the employee and the conduct and motivation of the employer will not require an interpretation of a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988); *Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1408 (9th Cir. 1992); *see also Dent*, 902 F.3d at 1117. Similarly, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted [during] state-law litigation ... does not require the claim to be extinguished." *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001).

As to step one, Plantiff's asserted causes of action involve rights conferred to her by virtue of state law, not the CBA. Plaintiff does not plead any violations of the CBA. *See generally* Compl. Plaintiff's claims arise from violations of state law alone. *Id.* Plaintiff's first cause of action involves a violation of Cal. Gov. Code § 12940(j), which prohibits harassment of an employee by any employer and any other person on the basis of sex. Compl. ¶¶ 30-41. Plaintiff's second cause of action involves a violation of Cal. Gov. Code § 12940(h), which protects an employee's right to oppose and complain about the harassing and hostile work environment created by any employer. *Id.* ¶¶ 42-51. Plaintiff's third cause of action involves a violation of Cal. Gov. Code § 12940(k), which requires any employer to take all reasonable steps necessary to prevent harassment and retaliation toward an employee. *Id.* ¶¶ 52-61. Plaintiff's fourth cause of action involves a violation of Cal. Lab. Code § 1102.5, which protects an employee from whistleblower retaliation by any employer. *Id.* ¶¶ 62-72. Plaintiff's fifth cause of action involves wrongful termination in violation of public policy and relies on the state laws discussed above. *Id.* ¶¶ 73-80. Plaintiff's sixth cause of action involve a violation of Cal. Lab. Code §§ 201, 203, and 558.1, which entitles Plaintiff to waiting-time penalties. *Id.* ¶¶ 81-85. Defendant argues that the "Labor Code violations underlying Plaintiff's claims are 'founded directly on rights created by collective bargaining agreements.'" Not. ¶ 48. But these alleged Labor Code violations can still exist without collective-bargaining agreements. Because Plaintiff's rights do not exist solely as a result of the CBA, the Court now inquires whether the state-law right is substantially dependent on analyzing the CBA.

Case 8:25-cv-02044-DOC-JDE   Document 16   Filed 10/01/25   Page 7 of 9   Page ID #:165

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-02044-DOC-JDE					Date: October 1, 2025
									Page 7

As to step two, Plaintiff's asserted claims may each be resolved without interpreting the CBA. Plaintiff's state-law claims do not address or require interpretations of the CBA for resolution. *See generally* Compl. Though Plaintiff's claims may have analogues in the CBA, as Defendant contends, Not. ¶¶ 49-50, Plaintiff only alleges violations of state labor and employment laws, *see generally* Compl. Plaintiff does not seek relief from violations of the CBA. *Id.* Defendant provides hypothetical connections to the CBA and state law claims and then urges the Court to consider, refer to, or simply apply the provisions of the CBA. *Id.* ¶ 49. For example, Defendants assert that the Court must determine whether Plaintiff was first required to exhaust the grievance procedures in the CBA. *Id.* ¶ 50. But Defendants do not show that this determination requires more than simply applying the CBA's provisions. This is not interpretation under § 301. *Dent*, 902 F.3d at 1116. Therefore, under this two-step test, Plaintiff's state-law claims are not preempted by § 301.

"If the complaint does not already disclose a sufficient factual basis for jurisdiction, such facts must appear in the notice of removal." *Kanter v. Warner-Lambert Co.*, 52 F. Supp. 2d 1126, 1129 (N.D. Cal. 1999). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case must be remanded to state court. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025) (cleaned up). Without "federal-question jurisdiction, the court loses as well its supplemental jurisdiction over the state claims." *Id.* at 30. Therefore, the Court does not exercise supplemental jurisdiction over the state claims here and declines supplemental jurisdiction.

Here, the Complaint "does not already disclose a sufficient factual basis for jurisdiction" and no such facts "appear in the notice of removal." *See Kanter*, 52 F. Supp. 2d at 1129. Plaintiff does not allege any federal-law claims, and the alleged state-law claims do not require interpreting the CBA under § 301 such that the interpretation would preempt resolving the state-law claims. *See Royal Canin*, 604 U.S. at 30. Thus, the Court no longer retains jurisdiction over the action and must remand the case.

### B. Diversity Jurisdiction

Defendants argue that this Court has diversity jurisdiction in this action. Not. ¶ 1. The Court disagrees.

Defendants have not met their burden to show that the amount in controversy requirement is satisfied. The Court considers lost wages in the period from termination until removal. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-02044-DOC-JDE                                        Date: October 1, 2025
                                                                      Page 8

2018) ("the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court *may grant* on that complaint *if the plaintiff is victorious*") (emphasis added). Here, it appears that Plaintiff was terminated on August 14, 2023, and the case was removed on September 10, 2025. *See generally* Not. At the time of Plaintiff's termination, she was paid $17.05 per hour, or $682.00 per week assuming a 40-hour work week. *Id.* ¶ 25.1. Accordingly, Plaintiff's past economic damages at the time of removal are approximately $73,656. *Id.*

Defendants assert that, based on Plaintiff's other benefits and past annual earnings, Plaintiff will likely seek an amount "much higher" than $75,000. *Id.* ¶ 25.2. Defendants cite her previous annual earnings of $344,679 in 2022; $329,846 in 2021; and $133,059 in 2020. *Id.*; *see also* Declaration of Aiko Bunn Persaud ¶ 5 ("Bunn Decl.") (Dkt. 4). However, Defendants do not expound on how Plaintiff earned this amount or where it came from. Accordingly, Defendants have failed to show that it is more likely than not Plaintiff would have earned this amount had she not been terminated. Plaintiff's lost wages of $73,656 are therefore below the required $75,000 minimum.

Additionally, to reach the jurisdictional threshold, Defendants ask the Court to include the following speculative awards and fees. Plaintiff seeks relief from Defendants for past emotional distress, punitive damages, and attorneys' fees. Not. ¶¶ 26-33. Defendants dispute that Plaintiff is entitled to damages for past emotional distress but still contend that plaintiffs in similar cases have been awarded "substantial sums for emotional distress." *Id.* ¶ 26. Defendants also calculate punitive damages in a range from $73,656 to $662,094. *Id.* ¶ 29. Lastly, Defendants assert that attorneys' fees alone would likely exceed $75,000 if Plaintiff prevails. *Id.* ¶ 32.

This Court does not include these types of speculative damages or civil penalties when calculating the amount in controversy. *See Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1011 (9th Cir. 2010) (recognizing that front pay is speculative); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Because Defendant has not satisfied their burden to show that more than $75,000 is at issue in this case, the Court lacks diversity jurisdiction.

The Court's decision not to include speculative awards in the amount in controversy is reinforced by the fact that Congress has not raised the amount in

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-02044-DOC-JDE | Date: October 1, 2025 |
| | Page 9 |

controversy since 1996—nearly three decades ago.[1] *See* The Federal Courts Improvement Act of 1996, 110 Stat. 3850. Since then, the inflation rate is nearly 100% (*i.e.*, prices have almost doubled). Thus, adjusted for inflation, the amount in controversy should be around $150,000. Stated conversely, a case worth $75,000 in 1996 is worth only $37,500 in today's dollars. Because inflation has plainly decreased the "real" value of the amount in controversy, more and more cases are able to meet the jurisdictional threshold and can be brought in federal court. As federal diversity jurisdiction expands, state court jurisdiction to decide purely state law issues and develop state law correspondingly decreases. Thus, the federal jurisdictional creep is incompatible with the most basic principles of federalism.

Federalism is not the only loser in Congress's failure to increase the amount in controversy. When a case is improperly removed, as happened here, ultimate resolution is delayed. Moreover, if a court does not immediately remand a case sua sponte, a plaintiff may move to remand. Because cases subject to motion to remand are typically small dollar cases, this increased motion work can quickly cause attorneys' fees to outrun any potential recovery and places an immense burden on a plaintiff's lawyer working on contingency. In this respect, the current low jurisdictional threshold reduces access to justice. Therefore, the Court respectfully encourages Congress to reconsider the amount in controversy minimum.

### IV. Disposition

For the reasons set forth above, the Court hereby **REMANDS** this case to the Superior Court of Orange County. All proceedings are hereby VACATED and removed from calendar.

The Clerk shall serve this minute order on the parties.

| | |
|---|---|
| MINUTES FORM 11<br>CIVIL-GEN | Initials of Deputy Clerk: kdu |

---

[1] For reference, in 1996, the minimum wage was $4.75 per hour, and only 16% of Americans had cell phones. Indeed, the current amount-in-controversy is older than both of my law clerks.